## Appeal of AMERICAN CREAM OF TARTAR CO. ·

Docket No. 2078.   Submitted August 1, 1925.   Decided October 12, 1925.

Upon the evidence submitted, *held*, that substantially all of the stock of the taxpayer and six other corporations was owned or controlled by the same interests.

*M. Manning Marcus, Esq.*, for the taxpayer.
*P. S. Crewe, Esq.*, for the Commissioner.

Before MARQUETTE and LITTLETON.

This appeal is from the determination of a deficiency in income and profits tax for the fiscal year ending March 31, 1919, in the amount of $1,722.64, arising from the refusal of the Commissioner to permit the taxpayer and seven other corporations to file a consolidated return.

FINDINGS OF FACT.

The taxpayer is a California corporation, with principal office at San Francisco, engaged in the manufacture of cream of tartar and tartaric acid. For the fiscal year ending March 31, 1919, the taxpayer filed its return on the basis of consolidation with the San Francisco Salt Refinery, Leslie Salt Co., Acme Land Co., Coast Investment

Co., Newark Land & Quarry Co., Commercial Salt Co., and the Dunbarton Land & Improvement Co.

Upon audit of the return the Commissioner held that the San Francisco Salt Refinery, Leslie Salt Co., Acme Land Co., and the Coast Investment Co. were consolidated with each other but not with the taxpayer or any other company, and that the Newark Land & Quarry Co., Commercial Salt Co., and the Dunbarton Land & Improvement Co. were not affiliated with the taxpayer or any of the other companies, upon the ground that substantially all of the stock of such corporations was not owned or controlled by the same or closely affiliated interests.

The Stauffer Chemical Co., a corporation organized and operating under the laws of the State of California, had been for many years engaged in the manufacture of chemicals. It employed chemists and technical men, possessed highly valuable formulae, produced chemicals which are essential in the manufacture of cream of tartar and tartaric acid, and was also in a financial position for carrying on large enterprises.

A. Schilling & Co., originally a partnership and later a corporation, operating under the laws of the State of California, was organized for the production of baking powder, in which cream of tartar and tartaric acid were essential.

Other interests had for a long time been in control of the baking-powder market as well as the production of cream of tartar. It became necessary, therefore, that an independent source of supply of the latter be developed for A. Schilling & Co. Accordingly, an arrangement was entered into with the Stauffer Chemical Co., a corporation also organized and operating under the laws of the State of California, engaged for many years in the manufacture of chemicals, employing chemists and technical men, possessing highly valuable formulae, and producing chemicals essential in the manufacture of cream of tartar and tartaric acid, and in a financial position also for carrying on large enterprises. As a result the American Cream of Tartar Co. was formed, 50 per cent of its stock being acquired by A. Schilling & Co. and 50 per cent by the Stauffer Chemical Co., which has been held in these proportions since 1899.

In the production of chemicals necessary for the manufacture of cream of tartar and tartaric acid, salt is essential. For a number of years the salt market had been controlled by certain interests, resulting in unusually high prices for salt. The Stauffer Chemical Co., the American Cream of Tartar Co., and A. Schilling & Co. found themselves seriously embarrassed from time to time on ac-

count of the high prices of salt. In order that they should not again be placed in a similar position, they proceeded to acquire producing salt deposits and potential salt deposits. As these salt deposits and lands were procured, companies were incorporated in each of which the Stauffer Chemical Co., through its stockholders, acquired certain stock interests, and A. Schilling & Co., through its stockholders, acquired certain stock interests, as hereinafter set forth.

During the taxable year, the officers of the corporations here claimed to have been affiliated were as follows:

C. de Guigne, who was president of the Stauffer Chemical Co., was president of the American Cream of Tartar Co. and the Newark Land & Quarry Co.

A. Schilling, who was president of A. Schilling & Co., was vice president of the American Cream of Tartar Co.

C. Jantzen, assistant secretary of the Stauffer Chemical Co., was secretary of the American Cream of Tartar Co. and of the Dunbarton Land & Improvement Co.

C. de Guigne, Jr., was president of the San Francisco Salt Refinery, Commercial Salt Co., Leslie Salt Co., Acme Land Co., Coast Investment Co., and the Dunbarton Land & Improvement Co.

John Stauffer, secretary of the Stauffer Chemical Co., was secretary of the San Francisco Salt Refinery, Leslie Salt Co., Acme Land Co., Coast Investment Co., Newark Land & Quarry Co., and the Dunbarton Land & Improvement Co.

The active management of all of the companies was carried on by these officers, the business being conducted in the offices and with the office force of the American Cream of Tartar Co. The business of the American Cream of Tartar Co. was the manufacture and sale of cream of tartar and tartaric acid, 90 per cent of which was sold to A. Schilling & Co.

The San Francisco Salt Refinery was engaged in refining salt. The Leslie Salt Co., and the Acme Land Co. carried on the business of producing salt. The Coast Investment Co. was a holding company for the San Francisco Salt Refinery, Leslie Salt Co., Acme Land Co., and Commercial Salt Co. The Newark Land & Quarry Co. and Dunbarton Land & Improvement Co. owned potential salt deposits.

The percentages of direct and indirect stock holdings in these companies during the taxable year were as follows:

| Stockholders. | American Cream Tartar Co. | San Francisco Salt Refinery. | Leslie Salt Co. | Acme Land Co. | Coast Investment Co. | Newark Land & Quarry Co. | Commercial Salt Co. | Dunbarton Land & Improvement Co. |
|---|---|---|---|---|---|---|---|---|
| C. de Guigne | 6.4 | 6.6 | 6.5 | 6.5 | 6.5 | 4.0 | 3.3 | 4.5 |
| C. E. deT. des M. Tr | 14.9 | 14.8 | 15.0 | 13.7 | 15.0 | 9.0 | 7.5 | 10.6 |
| Mme. J. de Guigne | 2.2 | 2.2 | 2.2 | 1.8 | 2.2 | 1.3 | 1.1 | 1.6 |
| Mme. E. de Guigne | 1.7 | 1.7 | 1.7 | 1.8 | 1.7 | .9 | .8 | 1.2 |
| A. de Guigne | 1.6 | 1.6 | 1.6 | 1.2 | 1.6 | .9 | .8 | 6.1 |
| J. H. Wheeler | 6.8 | 6.8 | 6.8 | 5.9 | 6.8 | 4.0 | 3.4 | 4.8 |
| J. Stauffer | 12.5 | 12.7 | 12.6 | 12.5 | 12.6 | 7.6 | 6.3 | 8.8 |
| J. Stauffer, Jr | .6 | .6 | .6 | .6 | .6 | .3 | .3 | .4 |
| C. Jantzen | 1.0 | 1.0 | 1.0 | 1.8 | 1.0 | .8 | .5 | .7 |
| C. de Guigne, Jr | 1.0 | 1.0 | 1.0 | 1.2 | 1.0 | .7 | .5 | .7 |
| Holen Stauffer | .6 | .5 | .5 | .6 | .5 | .3 | .3 | .4 |
| Marie Stauffer | .6 | .5 | .5 | .6 | .5 | .3 | .3 | .4 |
| A. Schilling | 25.7 | 39.7 | 39.9 | 37.5 | 39.9 | 63.7 | 19.9 | 50.9 |
| B. Schilling | 6.3 | | | | | | | |
| W. Schilling | 1.4 | | | | | | | |
| G. F. Volkman | 6.1 | 10.2 | 10.1 | 10.1 | 10.1 | 6.1 | 5.0 | .9 |
| J. N. Volkman | 3.5 | | | | | | | 4.0 |
| W. G. Volkman | 3.5 | | | | | | | 4.0 |
| D. G. Volkman | 3.5 | | | | | | | 4.0 |
| Minority | | .2 | | 4.2 | | | 50.0 | 1.0 |
| Total | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 |

The holders of 50 per cent of the stock of the Commercial Salt Co. designated as minority, were J. Baumberger, his four sons and three daughters, who, prior to the time that the management was taken over by the taxpayer, attempted to carry on the business of producing crude salt, but without success. Prior to the year 1918 the owners of substantially all of the stock of other companies, engaged in similar business and using salt in the manufacture of their product, acquired 50 per cent of the stock of the Commercial Salt Co. and took over the management of the business, purchased its product at a figure in excess of market, and refined the same through the plants of certain subsidiary companies. As a result, the Commercial Salt Co. was saved from bankruptcy.

### DECISION.

The deficiency should be computed on the basis of consolidation of the companies mentioned in the findings of fact, but excluding the Commercial Salt Co. Final determination will be settled on consent or on 15 days' notice, under Rule 50.

### OPINION.

LITTLETON: The question presented in this appeal is whether the taxpayer and the other corporations mentioned were affiliated during the taxable year ending March 31, 1919. The facts show that the corporations involved had an identity of interest and an intertwining of relationships, a series of processes and requirements which, for successful operation, depended one upon the other; a

centralized management, a policy as to expenditures which disregarded corporate lines, all directed toward one end—the profitable operation of one business. These subsidiary corporations were so conducted as to make them merely instrumentalities or adjuncts of the parent corporation. The facts further show substantial ownership and control by the same interests. The minority holdings in all of the companies, with the exception of the Commercial Salt Co., were negligible, ranging from zero to 4.2 per cent. The exception, the Commercial Salt Co., where the minority is shown as 50 per cent, should not in our opinion be consolidated.

Under all of the evidence in this appeal, we are of the opinion that substantially all of the stock of the taxpayer, the San Francisco Salt Refinery, the Leslie Salt Co., the Acme Land Co., the Coast Investment Co., the Newark Land & Quarry Co., and the Dunbarton Land & Improvement Co., was owned or controlled by the same interests, and that the tax of these companies should be computed on the basis of a consolidated return.